■ RUTH GOLDSTEIN, Individually and as Executrix of SEYMOUR GOLDSTEIN, Deceased, et al., Respondents, v CHEVRON CHEMICAL COMPANY, INC., et al., Defendants, and BURGESS VIBROCRAFTERS, Appellant. (And a Third-Party Action.)—In an action to recover damages for personal injuries and wrongful death, the defendant Burgess Vibrocrafters appeals from an order of the Supreme Court, Suffolk County (Doyle J.), entered September 1, 1989, which denied its motion for summary

judgment dismissing the complaint insofar as it is asserted against it.

Ordered that the order is affirmed, with costs.

While spraying ortho insecticide manufactured by the defendant Chevron Chemical Company, Inc., with a "Jungle Fogger" unit manufactured by the defendant Burgess Vibrocrafters (hereinafter Burgess), the decedent was engulfed in a white cloud of insecticide. He told the plaintiff that the "stuff has got to me". He began vomiting and subsequently collapsed. Approximately one hour later the decedent suffered a heart attack and died.

The defendant Burgess contends that the Supreme Court erred in denying its motion for summary judgment dismissing the complaint as against it since the decedent's inhalation of the insecticide was not the proximate cause of his death. We disagree. It is well settled that the movant must establish its cause of action or defense sufficiently to warrant a court directing judgment in its favor as a matter of law. The party opposing the motion must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact. Mere conclusions or unsubstantiated allegations or assertions are insufficient to raise a triable issue of fact (see, *Frank Corp. v Federal Ins. Co.,* 70 NY2d 966, 967; *Zuckerman v City of New York,* 49 NY2d 557, 562). Sufficient proof has been defined as affidavits based upon personal knowledge and documentary evidence (see, *Levitt v County of Suffolk,* 145 AD2d 414, 415).

Burgess's medical expert stated his opinion that the decedent could not have died based on inhaling the ortho insecticide, which was composed of 99% petroleum distillate, as the toxicological report indicated that the serum test for petroleum distillates was negative. The plaintiff's expert noted that the petroleum distillate test results would be more accurate if the specimens tested were of tracheal and bronchial fluid, which would be more telling evidence of what the decedent actually inhaled. Therefore, Burgess has only established at most that the decedent did not have petroleum distillate in his blood stream. Such proof does not indicate that the decedent could not have suffered a heart attack as a result of inhaling the insecticide vapors.

In any event, the plaintiff's medical expert raised a triable issue of fact. The expert stated his opinion that based on the record before him, the decedent's death was due to enhanced myocardial irritability induced by the inhalation of the active ingredient resmethrin contained in the insecticide.

We have reviewed the defendant Burgess's remaining contentions and find them to be without merit. Mangano, P. J., Bracken, Sullivan and Miller, JJ., concur.